# EXHIBIT 1

Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
rmills@millsandwoods.com
*Attorneys for Plaintiffs*

# IN THE MARICOPA COUNTY SUPERIOR COURT

## OF THE STATE OF ARIZONA

SARAH JOHNSON, as mother of MC, a minor child,

Plaintiffs,

vs.

PEORIA UNIFIED SCHOOL DISTRICT; CAVE CREEK UNIFIED SCHOOL DISTRICT; DEER VALLEY UNIFIED SCHOOL DISTRICT; DEBBIE BURDICK; MARK WARREN; ROBERT MILLER; NANCY SHAVER; JULIE VANDENBERG; SYDNEY MEYERS; MATTHEW OWSLEY; JENNIFER PURVIS; JANIENE MARLOW; JANA MILLER; JOSHUA RAWLINGS; MONICA CLAY,

Defendants.

No.:

**PLAINTIFF'S FIRST AMENDED COMPLAINTS' COMPLAINT**

Plaintiff SARAH JOHNSON ("Sarah") as mother and representative of her minor child ("MC") by and through their attorneys, Mills + Woods Law, PLLC, for their Complaint against PEORIA UNIFIED SCHOOL DISTRICT ("PUSD"); CAVE CREEK UNIFIED SCHOOL DISTRICT ("CCUSD"); DEER VALLEY UNIFIED SCHOOL DISTRICT ("DVUSD"); DEBBIE BURDICK; MARK WARREN; ROBERT MILLER;

NANCY SHAVER; JULIE VANDENBERG; SYDNEY MEYERS; MATTHEW OWSLEY; JENNIFER PURVIS; JANIENE MARLOW; JANA MILLER; JOSHUA RAWLINGS; MONICA CLAY (collectively "Defendants"), hereby allege as follows:

## INTRODUCTION

Sarah, on behalf of and as representative of her minor child MC brings this action for negligence, harassment, intentional infliction of emotional distress, and violations of MC's Civil Rights under Title VI of the 1964 Civil Rights act at the hands of Defendants. These causes of action arise from Defendants' deliberate indifference and failure to respond to multiple acts of racial harassment and discrimination directed at MC by both students and staff at PUSD, CCUSD, and DVUSD, as well as their failure to respond to reported student-on-student racial attacks on school premises that left MC vulnerable to bullying and further attacks. MC has spent years being subjected to constant unchecked racism and bullying which has affected MC's entire life. To this day, MC is scared to leave his home, and MC is fearful for his life. During his time at both Lone Mountain Elementary School ("LMES") and Vistancia Elementary School, MC was faced with daily racial attacks against him, just because he is African American. School Teachers, Officials, Administration, and other Staff were aware of the constant bullying, harassment, and racial slurs/racist actions and did nothing to stop them from happening.

While growing up in LMES, for a time, MC was too young to comprehend the ramifications of the words and actions being used against him. As he grew older, he realized that he was being racially profiled, attacked with hateful words – including the

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

"N" word – and bullied by his peers. Teachers knew. Administrators knew. Staff knew. Yet, nobody did anything to intervene or stop the repeated and brutal attacks against MC.

Despite Plaintiffs informing Defendants of these events, no changes, true discipline, compassion, or understanding took place. This continued lack of compassion and concern shown to MC continued throughout his time in the CCUSD, DVUSD, and PUSD. During MC's time in these school districts, the Federal Office of Civil Rights ("OCR") investigated PUSD specifically. Findings were issued from another student's complaint (OCR Case 08-22-1273) that confirmed that these types of events were regular occurrences.

In its summary of findings, the OCR stated:

OCR found that racial harassment from student peers and District employees created a hostile environment for the Student in school years (SY) 2020-21 and 2021-22, and that the District had notice of the hostile environment and failed to respond adequately to redress it. Moreover, information from the Complainant and Student, and records in the District's first data response to OCR, suggested that other students in grades 5-8 at the School were also subjected to peer harassment based on race, color, and national origin during SY 2021-22. Based on OCR's review of District records and interviews with seven students, six parents, and thirteen employees at the School, OCR identified numerous incidents of peer harassment based on race, color, and national origin of over a dozen grade 5-8 students that involved racial and ethnic slurs, epithets, gestures, symbols, and jokes. Based on the documentary evidence and twenty-two interviews, OCR found by a preponderance of the evidence that in SY 2021-22 the District: (1) failed to adequately investigate reported peer harassment based on race, color, and national origin to determine if it created a hostile environment for the students who were the subject of those reports; (2) failed to offer any supports or remedies to students who were harassed; (3) repeatedly responded ineffectively, or not at all, to reported harassment, allowing it to continue on a consistent basis and to create a school-level hostile environment; and (4) failed to investigate the known hostile environment at the School to identify other students who may have been subjected to harassment and a hostile environment but did not report such harassment to the School given its repeated failures to respond promptly and effectively to reported harassment.

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

OCR's investigation also identified a compliance concern with the District's recordkeeping and compliance reporting under the Title VI regulations. Timely, accurate, and complete recordkeeping will be essential to ensuring the District effectively responds to notice of student- on-student and staff-on-student harassment based on race, color, and national origin in the future.

The District agreed to address OCR's noncompliance findings and compliance concern under Title VI through the enclosed Resolution Agreement.

United States Department of Education, Office for Civil Rights letter dated September 30, 2022.

Sarah filed her own OCR complaint, Case 08-22-1002, that was dismissed because of the OCR's findings in Case 08-22-1273.

## JURISDICTION AND VENUE

1.     Pursuant to Article 6, Section 14 of the Arizona Constitution, this court has original subject matter jurisdiction in this Complaint because the claims relate to causes of action, the underlying acts and/or omissions for which, at all times relevant, have caused the events alleged herein to occur with primary effect in Maricopa County, Arizona.

2.     Jurisdiction is proper pursuant to 28 U.S.C. §1331 for the Title VI claims and 28 U.S.C. §1367(a).

3.     The amount in controversy exceeds the minimal jurisdictional limits of this Court.

4.     To the extent applicable, and without conceding that said statute applies, Plaintiffs hasve served their its Notice of Claim upon Defendants in compliance with A.R.S. §12-821, et seq. More than sixty (60) days have expired since Plaintiffs served their its Notice of Claim and Defendants have not responded in any manner to said Notice of Claim.

5.     Because MC was a minor at all times relevant in this Complaint and is still a minor, this Complaint is timely under A.R.S. § 12-821, *et seq.* as well as A.R.S. § 12-504.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and in that the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

**PARTIES**

7.      Plaintiff Sarah Johnson ("Sarah") as mother and legal guardian of MC is an adult resident of Maricopa County, Arizona.

8.      ~~Plaintiff~~ MC ("MC") is a minor resident of Maricopa County, Arizona.

~~9.      MC is Sarah's child.~~

9.      Sarah brings these claims on behalf of MC as if MC were an adult capable of bringing his own claims.

10.     Defendant PUSD is a public school district organized and operated under the laws of Arizona. PUSD is located in Maricopa County, Arizona, and it receives federal financial assistance and funding as those terms are used under Title VI.

11.     Defendant CCUSD is a public school district organized and operated under the laws of Arizona. PUSD is located in Maricopa County, Arizona, and it receives federal financial assistance and funding as those terms are used under Title VI.

12.     Defendant DVUSD is a public school district organized and operated under the laws of Arizona. PUSD is located in Maricopa County, Arizona, and it receives federal financial assistance and funding as those terms are used under Title VI.

13.     DEBBIE BURDICK is an individual who at all relevant times was in Maricopa County where the events took place.

14.     MARK WARREN is an individual who at all relevant times was in Maricopa County where the events took place.

15.     ROBERT MILLER is an individual who at all relevant times was in Maricopa County where the events took place.

16.     NANCY SHAVER is an individual who at all relevant times was in Maricopa County where the events took place.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

5

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

17.    JULIE VANDENBERG is an individual who at all relevant times was in Maricopa County where the events took place.

18.    SYDNEY MEYERS is an individual who at all relevant times was in Maricopa County where the events took place.

19.    MATTHEW OWSLEY is an individual who at all relevant times was in Maricopa County where the events took place.

20.    JENNIFER PURVIS is an individual who at all relevant times was in Maricopa County where the events took place.

21.    JANIENE MARLOW is an individual who at all relevant times was in Maricopa County where the events took place.

22.    JANA MILLER is an individual who at all relevant times was in Maricopa County where the events took place.

23.    JOSHUA RAWLINGS is an individual who at all relevant times was in Maricopa County where the events took place.

24.    MONICA CLAY is an individual who at all relevant times was in Maricopa County where the events took place.

## ALLEGATIONS

25.    While at Lone Mountain Elementary School ("LMES") in the CCUSD, MC was subjected to repeated racial slurs on the bus home from school.

26.    It took time for MC to realize what was happening to him.

27.    MC did not understand why kids his age where calling him the N-Word and making racist jokes to single him out.

28.    On Tuesday, May 16, 2017, MC came home from school visibly upset.

29.    Shockingly, MC asked his grandmother if he could have a knife.

30.    MC's Grandmother denied that request but asked MC why he would want a knife. MC gave no explanation and walked out of the kitchen.

31.    Later, Sarah discovered that MC had requested the knife because he wanted to commit suicide.

32.     On Wednesday, May 17, 2017, MC went to school at LMES. At 3:10 P.M., Sarah received a call that no parent of an elementary aged student should receive.

33.     Ms. Shaver told Sarah that she had received information from the parents of one of MC's classmates that, according to the classmate, MC had stated he was planning on committing suicide in the evening.

34.     Nobody called Sarah to relay this information.

35.     Ms. Shaver further informed Sarah that there was a 'shuffle' yesterday involving MC but refused to provide further information.

36.     While this call was occurring, MC had left school on the bus and arrived home while Sarah was speaking with Shaver.

37.     Sarah told MC that she was going to get his father on the phone so that the three of them could have a family meeting about what Shaver told Sarah.

38.     MC was initially reluctant to provide any details to his parents.

39.     Finally, MC admitted that he had been subjected to bullying daily because of his race.

40.     MC further explained that he had been pleading with classmates to stop and indeed planned on committing suicide.

41.     He informed his parents that a classmate had told him that "he should kill himself because nobody would care or miss him."

42.     When pressed by his parents as to why he would want to kill himself, MC responded that nobody loves him and that because of the constant bullying, nobody would care if he died.

43.     Sarah inquired as to how MC was planning to kill himself and MC stated that planned on cutting his arms.

44.     Sarah immediately contacted MC's therapist to request guidance and help.

45.     MC 's therapist told Sarah that she should take him to Phoenix Children's Hospital for a psychological evaluation.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

46.    After these revelations, Sarah learned from her mother that MC had asked for a knife the night before.

47.    Sarah performed a survey of their kitchen utensils and realized that MC had in fact taken a knife.

48.    MC refused to answer whether he took a knife and began to become agitated with his mother.

49.    Sarah hid the remaining knives.

50.    MC became distant, angry, and shut off from his parents and grandparents. Sarah, as a caring mother, continued to request more information from MC regarding the bullying and the knife.

51.    Finally, MC – after his grandmother arrived – informed his parents and grandmother that another event occurred on the bus where another student publicly announced that she "hated him."

52.    MC relayed that he had attempted to report these incidents to a school official.

53.    That official admonished MC for interrupting and adding things to his story as he told it.

54.    MC was dismissed by the school official.

55.    Eventually, MC opened up more to Sarah about how the other children at LMES were really mean to him.

56.    After returning home, MC asked that Sarah sleep side by side with him for the night.

57.    On Thursday, May 18 2017, Sarah called LMES in the morning at 8:02 A.M before school started.

58.    Sarah wanted to speak to Shaver, but she was unavailable. Instead, she was forced to leave a voicemail for Laurie MacDonald ("MacDonald").

59.    School staff informed Sarah that MacDonald was Shaver's assistant.

60.    Sarah drove MC to LMES and met with MacDonald at 8:30 A.M.

61.    During the meeting, Sarah informed MacDonald that she wanted to speak to Shaver, but MacDonald told Sarah that Shaver was in District Meetings all day.

62.    No phone call was made by Shaver to Sarah.

63.    MacDonald, MC, and MC's parents had a conference call together.

64.    During that meeting, MacDonald was told that a student was urging and encouraging MC to 'kill himself because nobody would care or miss him.'

65.    She was also told that another student had physically grabbed MC MC in an argument with MC that also included three other students. The four students had ganged up on MC.

66.    She was also told that another incident occurred during lunch wherein six children had cornered and ganged up on MC.

67.    In this incident, a student approached MC and told him that 'I can sit anywhere I want, because I'm not black and told MC to move.' Another student made a comment in reference to Rosa Parks. Two other classmates told MC that there was 'no rooms for blacks to sit.' They continued to taunt MC asking him if he 'wanted a white napkin?'

68.    Sarah told MacDonald that she needed to speak to Shaver but was rebuffed again because MacDonald stated Shaver was too busy, but Shaver would be informed of the situation.

69.    Sarah told MacDonald that there had been other incidents on the bus and in the lunchroom, including MC feeling embarrassed and harassed riding the bus with students, one of which was allowed to remain on the bus after bullying MC.

70.    Requests were made by Sarah to have the offending students removed from LMES.

71.    Sarah requested that another conference should be held with the presence of LMES' counselor, Julie Vandenberg.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

9

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

72.     On Thursday, May 18 2017, another meeting was held with MacDonald – this time including Julie Vandenberg.

73.     Julie Vandenberg told Sarah that she is limited in what she can do, as she is only the LMES counselor (and surrounding counselor for district) and cannot enforce any authority on decisions as this was Ms. Shaver's duties.

74.     Julie Vandenberg requested MC's bus route number from MacDonald to confirm the identity of one of the students involved in bullying MC.

75.     She stated that she would contact the bus driver to ensure that the offending student(s) have no contact with MC to/from school via the bus.

76.     Julie Vandenberg stated that she was working on a plan to implement a procedure so that MC is not subjected to any other incidences of bullying, harassment, intimidation etc.

77.     Julie Vandenberg informed Sarah that she will personally go to classrooms at LMES on Friday, May 19, 2017, to speak to children about the importance on not saying bad, hurtful words, that words can cause other children to be sad, on what constitutes inappropriate words, what to do when someone says, 'mean words', and how to cope with words that hurt our feelings etc.'

78.     Sarah felt relieved that Julie Vandenberg was going to take some action.

79.     Sarah further wanted the children involved in MC's bullying to be given the chance to apologize to MC, but MacDonald informed her that that was beyond her control.

80.     MacDonald and Julie Vandenberg both said that they would put together a plan to make sure that MC was not subjected to bullying or forced to interact with the bullies.

81.     On that same day, Sarah called Sydney Meyers ("Meyers") at 3:03 P.M. to inform her that she would be picking up MC from parent/student pick up. She also asked if Julie Vandenberg was around to see if one of the offending students was going to be riding the bus for the remainder of the school year.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

82.     Julie Vandenberg told Sarah that she had spoken with the student's mother who seemed to be supportive of a plan to prevent her son from bullying REDACTED.

83.     Julie Vandenberg told Sarah that the bus driver was informed to not let MC and the student sit near each other.

84.     Sarah was not happy with this proposal and wanted the student removed from the bus.

85.     Julie Vandenberg informed Sarah that she could not do that.

86.     In what was one of many instances of lip service from CCUSD employees, Julie Vandenberg told Sarah that she had spoken to the student and that he showed remorse.

87.     Julie Vandenberg told Sarah she informed the student to not have any further interactions with MC.

88.     Sarah picked MC up from LMES and MC informed her that on his way to the designated area to be picked up, the same student confronted MC and told MC that he had reported MC to the Principal.

89.     MC told him he had done the same. The student told MC that he did not care that MC had done so.

90.     Sarah informed Julie Vandenberg of this interaction. Julie Vandenberg simply apologized and stated she would inform Shaver.

91.     Of note, as of this point, Shaver had not contacted Sarah nor had any documentation been provided to Sarah.

92.     On Friday, May 19, 2017, Sarah emailed Laurie MacDonald with many inquiries and to provide further details regarding the incidents that had been taking place against MC.

93.     Despite Julie Vandenberg's statements to the contrary, she never visited MC's class to discuss bullying or the repercussions of harmful words.

94.     Sarah repeated her requests for action against the offending students and for a sit down with their parents.

95.     Sarah informed MacDonald that MC told her that Shaver had called MC to the office to inform MC that camera footage did not support MC 's claims that the offending student told MC that he didn't care about the report to the Principal.

96.     Shaver held this meeting with MC without informing Sarah.

97.     On May 20, 2017, Sarah emailed LMES' Superintendent, Matthew Owsley and explained that bullying is continuing to happen contrary to Arizona law and the school's and the District's policies.

98.     Sarah laid out the multiple incidents of bullying and racism that had occurred to this date.

99.     That same day, Sarah received an email at 6:02am from Julie Vandenberg stating that she wanted to check up on  REDACTED, as well as inform the bus driver on what was to take place in regard to the offending student and MC riding the bus together, that she had informed Shaver on the details, that she was still going to deliver an anti-bullying session to all third grade classroom, and had asked Shaver if they could facilitate a meeting with all parents of the offending students in all the incidences described above.

100.    That same day, Sarah then received an email from Macdonald at 7:04pm in which she wrote that she was apologetic that Shaver had not called Sarah yet.

101.    Macdonald reassured Sarah that she is taking this seriously and escorted MC to the bus to ensure no contact between MC and REDACTED STUDENT occurred. She also 'reiterated to the bus driver before he pulled away to make sure Daniel had no contact with [REDACTED STUDENT].'

102.    She explained to his substitute teacher and requested he be on extra alert regarding the bullying of MC.

103.    By Monday, May 22, 2017, Shaver still had not called Sarah back to discuss the events.

104.    That same day, at 7:47 A.M., Sarah sent an email to Shaver, Mark Warren, and other members of the school board detailing all four incidences that had occurred at LMES in regard to MC.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

105.   Later, around 1:30 P.M., Sarah met with Shaver, Macdonald, Owsley, and MC 's grandmother.

106.   Shaver informed Sarah that Owsley was a district Principal from another school that was present to 'mediate' and take notes.

107.   Owsley explained to Sarah 'that he and Nancy Shaver would communicate back and forth on certain issues that were being done at their schools, as well as they were 'buddies' in a sense, but they also came to each other when a conflict arose,' he also stated that he had not read the email Sarah had sent to Shaver and the school board so he wanted Sarah to summarize it.

108.   Sarah told him that she had yet to receive any documents from previous bullying, harassment, intimidation, and racial profiling incidences at LMES.

109.   Owsley then asked if MC was in special education.

110.   Sarah replied no that he reads at a seventh-grade level despite being a third grader, and Shaver offered that MC is a bright kid.

111.   Sarah also pointed out that MacDonald should not have made MC feel like he was lying when he was telling his truth.

112.   MacDonald denied doing so.

113.   Sarah reiterated that she wanted a plan in place to prevent bullying, harassment, intimidation, and racial profiling.

114.   She emphasized that the school and the District should not tolerate any of this.

115.   Owsley insisted that Sarah have a 'leap of faith' and that they were investigating these events and that he would conduct interviews with the offending students and other people that he felt could shed light on the incidents.

116.   He told Sarah that he did not believe there was a communication issue at the school.

117.   Owsley, Macdonald, and Shaver were told that MC had asked for a knife and had been plotting to commit suicide.

13

118.    At 1:27 P.M., Mark Warren sent an email to Sarah informing her that he would forward all of the concerns and incidents to administration and school board officials including Dr. Jana Miller and Dr. Debbie Burdick so that they could address the situation.

119.    Dr. Miller called Sarah at 3:55 P.M. to introduce herself and to inform Sarah she was Shaver's boss from LMES.

120.    Dr. Miller informed Sarah that this was the first she had heard of the incidents involving MC and that she had not seen any documents regarding the incidents.

121.    Sarah picked up MC at 3:40 P.M and was shocked to see Shaver guiding MC to my car.

122.    She excitably said to Sarah that 'MC is a such great kid. He had such a great day at school, didn't you?'.

123.    This was the only interaction to this point between Shaver and Sarah.

124.    MC told Sarah that he had met with Julie Vandenberg during the day and that Julie Vandenberg told him that she did not want to hear about him thinking about suicide.

125.    MC told Sarah that he was upset that his bullies were still in school and that he believed they were allowed to get away with their bullying and racial attacks.

126.    On Tuesday, May 23, 2017, Sarah emailed MacDonald and informed her that MacDonald had changed her story regarding a previous incident.

127.    MacDonald recanted the story she told Sarah in the early morning about how they needed to implement a way in which bullying should not happen in the school districts.

128.    At that time, a popular show on Netflix called "13 reasons why" demonstrated how bullying can cause suicide and was being watched by students.

129.    MacDonald pretended to show empathy and said that she would implement changes to protect MC.

130.    However, this never occurred.

131.    Instead, Sarah was taken aback that MacDonald now claimed that MC was somehow instigating fights.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

14

132.    Sarah pointed out other inconsistencies in MacDonald's statements and emails.

133.    That same day Sarah emailed Vandenberg to revoke consent for Vandenberg to speak with MC or to speak with his therapist.

134.    That same day Dr. Miller called Sarah at 3:21 P.M. to tell Sarah that she cannot give detailed information on the consequences given to the offending students, that any documents relating to the incidents will only be given to Sarah at the end of the conclusion of case, that Owsley was brought in to do 'investigation and outside work', that she is trying to figure out the facts, that Owsley wanted to provide information on his investigation, and that she had opened up two investigations on these matters: MC's bullying, racial profiling, harassment, intimidation case; and Employees and responsibilities.

135.    Miller said that Shaver should have been in contact with Sarah, and further relayed that Macdonald has tried to do what she can regarding this.

136.    Sarah demanded documentation on the incidents and the repercussions.

137.    Miller refused and stated that documents would only be provided when they are done. She stated her only concern was that MC had said he wanted to commit suicide.

138.    The school, its staff, its administration, and any other District employees did nothing to prevent MC from having further interactions with the offending students. MC reported that he continued to be bullied.

139.    On Wednesday, May 24, 2017, at 10:30 A.M. Sarah called Dr. Miller.

140.    Dr. Miller advised that she had received Sarah's May 23, 2017 email.

141.    She refused to advise whether corrective action had been taken, and further told Sarah to talk to Matthew Owsley.

142.    Sarah advised that she had been requesting his contact information for a while, but Laurie MacDonald and Nancy Shaver had still not provided it.

143.    Dr. Miller told Sarah that Sarah would receive documentation only when Matthew Owsley had finished his investigation.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

15

144. Dr. Miller also told Sarah that it is impossible to monitor interactions between students.

145. Sarah received a call from Matthew Owsley at 2:04 P.M. wherein he explained how he conducted investigations.

146. He was dismissive of Sarah's claims that MC had been encouraged to commit suicide by other students.

147. Instead, he focused on the fact that MC had been 'acting out'.

148. Owsley acknowledged that he was aware of the bullying occurring.

149. Owsley wanted to interview MC and was perturbed that he was not at school.

150. MC had not attended school that day because he did not feel safe at LMES.

151. Sarah told Owsley how upset she was that Nancy Shaver had not called her to inform her that MC had voiced his desire to commit suicide in class.

152. Owsley said he would investigate.

153. Later, at 2:12 P.M., Owsley left a voice mail on Sarah's phone stating that he discovered that MC had voiced his desire to commit suicide on May 15, 2017, and that they were informed by a student that that MC had made plans to commit suicide.

154. On May 26, 2017, Dr. Debbie Burdick sent a letter to Nancy Shaver detailing that Shaver was being reassigned to home (with pay) pending an investigation regarding student discipline.

155. In that letter, Shaver was told she may not have any contact with school district staff, students or parents.

156. She was instructed that she was not allowed to be on any District campus without express permission.

157. On May 30, 2017, Matthew Owsley responded to Sarah via email Sarah and stated:

> I appreciate you sending this to me. I have been in contact with the district office and was told you would be hearing back from them this week. We appreciate the patience and communication!!!

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1

2      158.   On June 5, 2017, Janiene Harlow wrote a letter to Sarah to "follow up"

3   regarding bullying/harassment/intimidation.

4      159.   Sarah did not receive this letter.

5      160.   She outlined the policies available regarding bullying, harassment, and

6   intimidation as well as student rights under Arizona Revised Statutes.

7      161.   She also outlined procedures they would take to limit further bullying.

8   Finally, she outlined student services when bullying occurs.

9      162.   She then provided a timeline of events from the "investigation."

10     163.   Her timeline provided details that corroborated the events MC and Sarah had

11   been reporting.

12     164.   Provided with the letter were incident reports created from MC 's discussions

13   with administration.

14     165.   It was disclosed that not only had students been bullying REDACTED, but

15   that – because of the discussions with administration – MC was now being called a snitch

16   by the bullies.

17     166.   Furthermore, apology letters from the students were included, further

18   corroborating the horrifying events at the school.

19     167.   On June 14, 2017, Sarah met with Janiene Marlow to obtain copies of the

20   June 5, 2017, report as Sarah had not seen it yet.

21     168.   Marlow was dismissive of Sarah's requests at the meeting.

22     169.   Marlow told Sarah to just read the report instead of asking questions.

23     170.   Finally, Marlow told Sarah that "what's in the past, is in the past and cannot

24   be undone."

25     171.   On June 20, 2017, Sarah emailed Marlow requesting – again – the

26   information she had previously requested regarding the incidents.

27     172.   Specifically, Sarah referred to the meeting held on June 14, 2017, with

28   Marlow.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

17

173.    In writing, Sarah again requested: "Documents I requested weeks ago regarding ALL documents related to the bullying, intimidation, racial discrimination and harassment my son … ( MC ) … endured while attending Lone Mountain Elementary School (LMES) in Cave Creek for the 2016-2017 year."

174.    Sarah also relayed that there were severe discrepancies in the report.

175.    Sarah specifically told Marlow that she had been informed by Dr. Miller that there were two investigations open regarding her son while he attended LMES.

176.    Sarah stated that she was told by Dr. Miller that Shaver, as well as ALL the bullying, intimidation, racial discrimination, and harassment her son endured were being investigated.

177.    Sarah had never received any documents pertaining to the investigation of Shaver.

178.    Sarah made multiple requests regarding consequences and District/School follow-up and explained further that LMES was a hostile environment for MC with nothing being done to protect him from bullying and racial attacks.

179.    Sarah further requested in writing the specific protections LMES would be implementing to protect MC from bullying and hateful racial attacks.

180.    Sarah let Marlow know that she had no faith anymore that LMES cared about MC or cared enough to implement safeguards and procedures to protect any student from bullying and racial attacks.

181.    Sarah further informed Marlow that the school employees were inventing dates for some of the incidents and that it was clear the school and its staff could not care less about documenting the events.

182.    Sarah discussed some of the specific incidents and told Marlow that it was inconceivable that Shaver would not know how to handle events such as those perpetrated against MC because Shaver had been a Principal for over a decade.

183.    Sarah pointed out that the school changed dates of the incidents.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

18

184.    She also became rightfully enraged upon learning that Shavers had relayed that on May 18, 2017 "When the students got back in the class, MC then said he would kill himself and started cutting his neck and finger."

185.    Sarah had never been told this until Shavers emailed her months after.

186.    No phone calls, no messages, and no emails were sent prior to this.

187.    MC reported to Sarah on June 18, 2017, that yes, after [REDACTED STUDENT NAME] told him to 'go kill himself and nobody would care or miss him' he "went into his classroom, Ms. Purvis was at her desk and he proceeded to ask classmates for sharper scissors. He then proceeded to use scissors to proceed to cut his arms and put scissors on his neck."

188.    Sarah informed Marlow that Owsley specified that he interviewed twelve students but, in the documents, there were only seven witness accounts by students in which a few never signed the document.

189.    Sarah pointed out all the discrepancies in the 70+ page report.

190.    Sarah correctly pointed out that Shaver failed at all levels to properly document and report the incidents.

191.    Sarah further pointed out that on page 72- Janine Marlow wrote "no timeline, nothing written down."

192.    Shaver did nothing to stop or prevent future attacks.

193.    Marlow did nothing to stop or prevent future attacks.

194.    On June 26, 2017, Janiene Marlow emailed Sarah, completely dismissive of Sarah's complaints.

195.    On June 27, 2017, Sarah responded to Marlow: "When are you free to discuss this email you responded to?"

196.    Marlow responded that she was available until 5:00 today (6-27) to speak with you by phone, and that she would be out of the office after today until July 10th.

197.    On July 6, 2017, Dr. Jana Miller emailed Sarah to setup another meeting with Janiene Marlow. This email was sent as a reply to Sarah's June 27, 2017, email.

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

198.    It took nine (9) days for Miller to respond to Sarah.

199.    Sarah attempted to give LMES another shot for MC to attend school for the 2017-18 school year.

200.    However, after MC was placed in a classroom with a previous bully, Sarah withdrew REDACTED.

201.    On August 9, 2018, Sarah emailed Janiene Marlow and Laurie MacDonald to point out her disappointment that LMES and its staff completely failed to protect MC yet again – detailing the events of the previous year.

202.    On August 10, 2018, Sarah emailed Janiene Marlow and Laurie MacDonald to correct certain dates of events that had previously occurred including reinforcing the fact that MC had continually been bullied and subjected to racist attacks and taunts.

203.    That same day Janiene Marlow emailed Sarah and was defensive in all aspects – dismissing Sarah's valid complaints.

204.    Sarah emailed her back and detailed – again – all of the events of the previous year plus.

205.    Marlow replied and passed the buck to a Dr. Kent Frison and thanked Sarah for scheduling a meeting with Principal Miller.

206.    Sarah responded that she had not been able to meet with Principal Miller and that she would be picking up MC's belongings and withdrawing him from school.

207.    Sarah then emailed Warren explaining the events that had occurred at LMES.

208.    Sarah requested that a report be created and provided to her regarding the events of the last year plus.

209.    Burdick emailed Sarah on behalf of Warren telling Sarah that this was the first they had heard about the events at LMES and until she had spoken to Dr. Frison, she could not respond.

210.    Sarah replied to Burdick upset that nothing had been done and told her that she had reached out to the NAACP and that Jana Miller and Marlow had been in a meeting with Sarah and Mr. Williams from the NAACP in 2017, but still nothing had been done

211.    Sarah emailed Principal Miller sharing her displeasure and disgust that still nothing had been done to correct the racist acts occurring at LMES.

212.    Marlow emailed Sarah and told her she had no record of some of the events and attached policies detailing how to proceed.

213.    Sarah responded that she was upset that events weren't properly recorded and attached a document showing those events.

214.    On August 14, 2018, Sarah emailed Principal Robert Miller complaining that MC had been placed in a class with one of his bullies – seated directly next to him.

215.    On August 15, 2018, Mr. Miller emailed Sarah seeking clarification and told Sarah that "there is no indication that a student in Mrs. Neiman's classroom has made racist slurs and comments to your son. With that said, are you now notifying me that a student in Mrs. Neiman's classroom made a racist slur and comment to your son on Thursday, August 9, 2018?"

216.    Sarah responded with the details of what happened, that meetings had taken place, and that Shaver had not recorded the details.

217.    On August 28, 2018, Marlow emailed Sarah and provided two letters to Sarah.

218.    Sarah responded that she wanted all records for MC and any investigations, details, complaints, resolutions, or otherwise maintained by anyone at LMES or the CCUSD.

219.    On September 6, 2018, Sarah emailed Frison to escalate her concerns.

220.    She detailed the previous issues.

**221.**    Frison responded that he had reviewed the District file and that the District had provided all responsive information, and that if Sarah wanted to file a complaint against a staff member, she could use forms attached to this email.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**The 2018-2019 School Year**

222.    Sarah withdrew MC from LMES and enrolled him in a Charter School, Foothills Academy.

223.    He was enrolled in this school because Sarah and her family had become fed up with the lack of action by LMES, CCUSD, and their staff.

224.    This year was a perfect example of how schools should address bullying.

225.    MC had one incident of bullying that was nipped in the bud immediately by the Charter School's staff. MC otherwise enjoyed a regular school year with no bullying until his family moved back to CCUSD.

226.    Near the end of the school year, Sarah again moved MC back into the CCUSD district.

227.    Furthermore, because of financial issues, Sarah's mother being diagnosed with stage four lung cancer, and the fact that travel to and from the charter school became prohibitive, MC was enrolled at Black Mountain Elementary School ("BMES") for the remaining approximately two (2) months of the school year.

228.    No instances of bullying, harassment, intimidation, or racism occurred during those months.

229.    Because of this experience, and because LMES was closer to Sarah's domicile, Sarah wanted to potentially return MC to LMES as she hoped that a year away from LMES would have allowed LMES to address concerns and implement new policies and procedures that would protect students like MC from bullying, harassment, intimidation, and racism.

230.    On May 21, 2019, Sarah inquired directly to Matthew Owsley about the possibility of MC attending LMES again.

231.    Ultimately, Sarah did not feel comfortable that LMES had addressed or would address any bullying or racism.

232.    Instead, MC was enrolled at Paseo Hills in the DVUSD.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**Paseo Hills School Year 2019-2020**

233.    Sarah and her family moved to the Deer Valley Unified School District because they sold their family home.

234.    MC faced more bullying, harassment, intimidation, and racism at the hands of students and teachers at Paseo Hills.

235.    MC was singled out at Paseo for liking a classmate who was a girl.

236.    The PE teacher called Sarah to scold her about her son sitting on a couch with a girl.

237.    MC also began to act out again.

238.    MC's teacher, Mr. Mendoza began deriding and casting aspersions on MC.

239.    Furthermore, Sarah Unti insulted MC in her classroom.

240.    She called MC the N-Word.

241.    Nobody at Paseo addressed the issues.

242.    On February 13, 2020, Sarah Unti emailed Sarah that she completely understood why MC is still a little upset and uncomfortable in my classroom and around her.

243.    Unti provided lip service regarding that she did not mean to make MC uncomfortable and that she would refrain from using certain terms in the future when talking with MC.

**The 2020 – 2022 School Years**

244.    Sarah and her family moved again and enrolled MC in Vistancia Elementary School.

245.    On October 25, 2021, Mr. Rawlings, the principal, emailed the Vistancia parents acknowledging that bullying is a problem and that words can have effect on people.

246.    On November 30, 2021, MC was suspended for "assault" on two students.

247.    MC had gotten into a fight because MC had been continually harassed, called the N-Word, and had been subjected to continual racial slurs.

248.    On December 2, 2021, Sarah met with Rawlings regarding MC's suspension.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

249.    On December 3, 2021, Sarah emailed Rawlings and explained to Mr. Rawlings that MC had been bullied regarding the 'NIGER INCIDENT' and students had been calling him the N-word with no repercussions.

250.    The NIGER INCIDENT involved a teacher and classmates.

251.    When Niger came up during class, students immediately began calling MC the N-Word and the teacher had done nothing to stop it.

252.    On December 9, 2021, Sarah emailed Rawlings regarding the NIGER INCIDENT concerned that instead of the students calling MC the N-Word, MC was the one to be punished.

253.    Mr. Rawlings responded that he had "lengthy conversations with the other student and his parents."

254.    On January 16, 2022, Sarah reported to Mr. Rawlings that students are involved in illegal activities. Also, that [STUDENT NAME REDACTED] has been very vocal with racial slurs to MC and others.

255.    On February 9, 2022 at 5:12PM, Sarah emailed Rawlings upset that MC had yet again been the subject of bullying at the hands of [STUDENT NAME REDACTED].

256.    [STUDENT NAME REDACTED] had been using racial slurs on campus and in classrooms.

257.    MC expressed that racial slurs continue to happen in Henderson ELA and Brubaker SCIENCE.

258.    [STUDENT NAME REDACTED] yells "Master please" and makes jokes about slavery.

259.    One incident occurred on February 9 where [STUDENT NAME REDACTED] was hit by a notebook spring and he yelled "Master please stop".

260.    On February 11, 2022, Rawling replied that "I have addressed this concern with [STUDENT NAME REDACTED]. MC should notice an immediate cessation of the behavior."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

# OCR COMPLAINT FILED

261.    Sarah filed an OCR complaint.

262.    The full text of the OCR complaint follows:

November 2021- my son MC was suspended from Vistancia Elementary for 5 days due to him confronting a student [STUDENT NAME REDACTED] about racial slurs and feeling overwhelmed and upset with the racial slurs subjected to him because he is bi-racial. Principal Joshua did not discipline the teenagers who were racist but suspended my son for standing up for himself and confronting the racist students. (see documentation for clarification)

Principal Joshua referred to my son and his friends as being "menace to the neighborhood" and that other students were frightened of him in which caused us great stress being that my son is not a menace and was subjected to racial slurs and discrimination from other students. I enrolled my son into counseling because the principal made it out like my son had anger issues and my son's mental state was decreasing as he was depressed and upset over the allegations from the principal. I pressed principal Joshua to hold these other students who were engaging in racist behaviors and or slurs and they should have to take accountability for their actions but instead my son was suspended and treated unfairly. I reminded Joshua that my son was an all- A student and that he was not a menace to the neighborhood and it was wrong for him to only discipline my son while others did not get in trouble when they were being racist against my son.

December 2021- My son made a 'dis-nuts' joke with friends who were laughing at lunch at recess. [STUDENT NAME REDACTED] was a student that took an interest in my sons' friends group for recess and followed them around often and had a crush on my son who did not feel the same towards her but was friendly towards her. [STUDENT NAME REDACTED] said she was not going to fall for the groups jokes and left the group.  MC went to class afterwards and saw [STUDENT NAME REDACTED] speaking to their shared English teacher, Mrs. Henderson. Mrs. Henderson told my son to go down to the office due to the dis nuts joke and my son went down to the office. Mrs. McPeterson came in and asked MC what happened, MC explained the incident at recess and she told him to make better choices in friends, but then Monica Clay (assistant principal) walked in as McPeterson said she was going to send  MC back into class, and said that 'oh, what is this about? McPeterson just said it was a "situation with MC and we are wrapping it up." Mrs. Clay said she wanted to look at the paperwork describing the situation and she commented that, " I think there is more to this situation and that this is sexual harassment going on.'  MC said, "me?" Mrs. Clay said,

"yes and you.(attitude emphasis)." I received a call from Monica Clay and was unsure as to why my son was the only one being disciplined when other students were heard saying it and the kids involved had been having a pleasant funny conversation. My son was punished by an in person suspension for 1 day.

December 2021- a bullying assembly was at Vistancia Elementary School. My son wrote to a teacher Mr. O'Wheiler regarding a racial slur from classmates regarding the country of Niger and racial slurs he and others were being subjected too. I emailed principal Joshua regarding this and he never got back to me which was very upsetting being that my son wrote the letter to a teacher and Joshua, nor the teacher wrote back regarding remedies or resolutions.

January 2022- student [STUDENT NAME REDACTED] calling my son MC racial slurs and principal Joshua not doing anything about it. (see email for clarification)

January 2022- a 9th grader who attended Lake Pleasant High School was inappropriately fondling a 8th grader during a weekend and I emailed principal Joshua once I heard about it. The accused mother of the 9th grader filed an injunction against harassment against my son, MC because he re-posted a screenshot of the 9th grader being a 'rapist,' because of his criminal actions. The case was dismissed against my son, MC in February of 2022 but I incurred $5500.00 from having to hire an attorney. Principal Joshua did not attempt to contact the victim in this matter per his email response- see attached.

Approximately February 2022- substitute teacher at Vistancia Elementary School touched my son's hair in front of entire class. I was just made aware of this incident on September 29, 2022 while discussing the recent article to him in the car. According to my son, he asked to use the restroom and the substitute teacher asked if he had rubber bands in his twist style hairstyle. My son, MC said "sure" and she proceeded to touch and fondle his hair for a long duration in front of the entire classroom. My son said he felt very uncomfortable and was embarrassed to say anything because he is a student, and the substitute teacher was an adult. Description of substitute teacher is as follows: older white women with grey hair that substituted Mr. Bennett's classroom in first hour in approximately February 2022)

February 2022- I emailed principal Joshua after learning from my son, that another student named [STUDENT NAME REDACTED] was saying racial slurs towards my son and other students. REDACTED. (See email for

clarification) in the classroom such as "master please," and other racial profanities.

August 2020- May 2022: My son MC and other students have reported many racial slurs and racial incidents and harassment that occurred and neither the teachers and principal or staff did anything to terminate it. There were jokes referencing racist white law enforcement, students saying the 'n' word, jokes about George Floyd, supporting Hitler, slavery jokes (teachers being present and not terminating such language).

All of the above incidences prove that racial bias, discrimination, harassment, and prejudice occurred at Vistancia Elementary School and that my son, MC was subjected to a hostile, toxic, racist environment and none of the front desk, assistant principal, principal and teachers did anything to stop or decrease the behavior and racial slurs and incidences. When I had face to face conversations with Joshua and over the phone, he was quick to suspend or talk ill about my son because my son would stand up for himself and others, but never held other students (white/causation) students accountable which I told him was unfair and seemed like he and other parties involved were purposely doing so which was unfair and wrong. I told him that for the kyle incident (my son was suspended for 5 days) that i would like to sit down with his parents to discuss the racial profanities and Joshua didnt think it was right to arrange it. I told him that my son had been bullied before (and attempted suicide due to being bullied due to his race) and that people who say racist things or engage in racist behaviors need to take accountability as well and that it is not fair or right for him to be allowed to do so and not be held accountable for his horrific behaviors. The meeting was never arranged between principal Joshua, I, my son and the other parties.

## COUNT I

## VIOLATION OF TITLE VI

(CCUSD, DVUSD, PUSDAll Defendants)

263.    Plaintiffs incorporate by reference all previous allegations in the foregoing paragraphs as fully set forth herein.

264.    The regulation implementing Title VI, at 34 C.F.R. § 100.3, provides that no person shall, on the basis of race, color, or national origin, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program to which Title VI applies. The existence of a hostile environment based on race, color, or

national origin that is created, encouraged, accepted, tolerated, or left uncorrected by a recipient constitutes discrimination on the basis of race, color, or national origin in violation of Title VI.

265.    To establish a violation of Title VI under the hostile environment theory, OCR must find that: (1) a hostile environment based on race, color, or national origin existed; (2) the recipient had actual or constructive notice of the hostile environment; and (3) the recipient failed to respond adequately to redress the hostile environment.

266.    Harassment creates a hostile environment when the conduct is sufficiently severe, persistent, or pervasive so as to interfere with or limit an individual's ability to participate in or benefit from a recipient's program. Harassing acts need not be targeted at the complainant in order to create a hostile environment; the acts may be directed at anyone. The harassment also need not be based on the complainant's or victim's race, color, or national origin so long as the harassment is motivated by race, color, or national origin. For example, the harassment might be based on the race, color, or national origin of a friend or associate of the victim. The harassment must, in most cases, consist of more than casual or isolated incidents to establish a Title VI violation. Whether harassing conduct creates a hostile environment must be determined from the totality of the circumstances. OCR will examine the context, nature, scope, frequency, duration, and location of the harassment, as well as the identity, number, age, and relationships of the persons involved. If OCR determines that the harassment was sufficiently severe that it would have adversely affected a reasonable person, of the same age and race, color, or national origin as the victim, under similar circumstances, from participating in or enjoying some aspect of the recipient's education program or activity, OCR will find that a hostile environment existed.

267.    A recipient may be found to have violated Title VI if it has failed to correct a hostile environment based on harassment of which it has actual or constructive notice.

268.    Officials at CCUSD, DVUSD, and PUSD had notice that MC was subjected to a racially hostile educational environment, but took no meaningful action to stop the racial harassment.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

269.    By effectively ignoring the harassment, they intentionally allowed the racially hostile educational environment to occur, or were deliberately indifferent to it.

270.    The racial harassment described in this Complaint was so severe and objectively offensive that it deprived MC of access to the educational opportunities and benefits provided by the school.

271.    The conduct in violation of Title VI described in this complaint has caused MC severe and permanent psychological and emotional harm.

272.271.    The conduct in violation of Title VI described in this Complaint has also caused MC economic harm.

## COUNT II – NEGLIGENT FAILURE TO PROTECT
### (CCUSD, PUSD, AND DVUSD)

273.272.    Plaintiff restates and realleges the allegations of the previous paragraphs of this Complaint as if fully set forth herein.

274.273.    The Districts are responsible via *respondeat superior* for the torts of their employees committed during the course of their employment.

275.274.    The Districts had a reasonable duty to exercise reasonable care to control their employees and to prevent them from intentionally harming others or from conducting themselves to create an unreasonable risk of bodily harm to others.

276.275.    The Districts had a duty to protect its students, including MC, from reasonably foreseeable harm.

277.276.    The Districts breached their duties to exercise reasonable care to control their employees and protect MC from reasonably foreseeable harm.

278.277.    As a direct, foreseeable, and proximate result of the Districts' actions and inactions, MC has suffered physical harm, humiliation, pain and suffering, emotional distress, mental anguish, and other damages and injuries alleged herein in amounts to be proven at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## COUNT III – NEGLIGENCE / GROSS NEGLIGENCE

### (*Against All Defendants*)

279.278.    Plaintiff restates and realleges the allegations of the previous paragraphs of this Complaint as if fully set forth herein.

280.279.    At all relevant times, each and every Defendant had an individual and collective duty to exercise ordinary care for the safety and well-being of MC.

281.280.    Defendants have a statutory and common law duty to assure the safety and wellbeing of persons in their care and custody.

282.281.    There was a special relationship between MC and the administrators, teachers, and staff members of the Districts because he was a student and minor in their care.

283.282.    Defendants' duties to MC were heightened as Defendants were charged with the protection and education of MC.

284.283.    Defendants were, at all relevant times, acting within the course and scope of their employment.

285.284.    The Districts are vicariously liable for the tortious acts and omissions of their employees and agents.

286.285.    A reasonable person under the same circumstances would have known or suspected that racially motived harassment and bullying was occurring.

287.286.    A reasonable person would have followed the proper channels to report and stop the abuse of MC.

288.287.    A reasonable person would have known or suspected that teachers were racially harassing and bullying MC.

289.288.    Defendants systematically and repeatedly breached their duties to MC as set forth by their acts and omissions detailed herein.

290.289.    As a direct and proximate result of Defendants' breaches, MC suffered harm and sustained damages.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

291.290.    Defendants' acts and failures to act as set forth above also demonstrate gross and wanton negligence in that each of the Defendants knew or should have known that their acts, individual and collectively, created an unreasonable risk of harm to MC and a high probability that substantial harm would result.

## COUNT IV – NEGLIGENCE *PER SE*

### (*Against All Defendants*)

292.291.    Plaintiff restates and realleges the allegations of the previous paragraphs of this Complaint as if fully set forth herein.

293.292.    A.R.S. § 13-3620 requires school personnel who develop a reasonable belief that a minor is or has been the victim of abuse to report the suspected abuse to a peace officer.

294.293.    Defendants knew or should have known that certain students and employees was abusing MC based on the facts alleged herein.

295.294.    School administrators knew of the abuse of MC, but did not report the abuse to a peace officer as required by A.R.S. § 13-3620.

296.295.    Despite the fact that all of the Defendants knew or should have known that MC was being abused and the fact that they were all legally mandated reporters, *none* of the Defendants reported the abuse to a peace officer as required by A.R.S. § 13-3620.

297.296.    Defendants' failure to report the abuse or suspected abuse of MC was negligent *per se* because Defendants acts and omissions were in violation of a statute enacted for the protection and safety of the public and vulnerable individuals such as MC.

298.297.    Certain Employees were aided in the accomplishment of these tortious and criminal acts by the existence of their agency and/or employment relationship with the District.

299.298.    As a direct and proximate result of the acts and omissions of the Defendants, MC suffered serious injuries, including physical pain and discomfort, mental and emotional distress, anxiety, loss of enjoyment of life, humiliation, medical bills, and other damages and will continue suffering similar damages.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## COUNT V – NEGLIGENT HIRING, SUPERVISION, TRAINING, AND RETENTION

### (CCUSD, PUSD, AND DVUSD)

300.299.    Plaintiff restates and realleges the allegations of the previous paragraphs of this Complaint as if fully set forth herein.

301.300.    The District is responsible via *respondeat superior* for torts committed by its employees during the course of their employment.

302.301.    The District and its administrators, employees, and agents owed a duty of reasonable care and competence to all of its students, including MC, to prevent injury or harm including reasonable care related to the hiring, training, supervision, and monitoring of its teachers, administrators, agents, or employees to prevent, among other things, its teachers from using their position of power to racially harass and attack students

303.302.    The District and its administrators, employees, and agents both individually and through the acts and/or omissions of their agents and employees, breached the duties they owed to MC by repeated failing to take reasonable steps to train, supervise, monitor, investigate, or remove employees from classrooms after learning of their racially motived harassment and attacks on MC.

### JURY TRIAL DEMAND

304.303.    Plaintiffs hereby demand a jury trial in this matter as to all claims and against all Defendants.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests that the Court enter judgment against the Defendants and in favor of the Plaintiffs, as follows:

a)    For compensatory, general and special damages against each and every Defendant, jointly and severally, in an amount to be proven at trial;

b)    For all other non-pecuniary damages as to be proven at trial;

c)    For punitive and exemplary damages against Defendants in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

32

d)c) For pre-and post judgment interest to the extent provided by law;

e)d) For Plaintiffs' incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 U.S.C. §1988 and as otherwise authorized by any other statute or law; and

f)e) For such other relief as this Court may deem proper.

**RESPECTFULLY SUBMITTED** this 24th day of February 2025.

**MILLS + WOODS LAW, PLLC**

By  /s/ Sean A. Woods
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
*Attorneys for Plaintiffs*

**ORIGINAL** filed this 24th day of February 2025
via AZTurboCourt with the Clerk of
the Maricopa County Superior Court.

 /s/ Ben Dangerfield

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556